| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>**PORZIO, BROMBERG & NEWMAN, P.C.**<br>100 Southgate Parkway<br>P.O. Box 1997<br>Morristown, New Jersey 07962<br>(973) 538-4006<br>(973) 538-5146 Facsimile<br>Rachel A. Parisi, Esq. (raparisi@pbnlaw.com)<br>David E. Sklar, Esq. (desklar@pbnlaw.com)<br>*Counsel for the Plaintiff* | |
| In re:<br><br>Steven T. Margaritondo and Stacy Margaritondo,<br><br>Debtors. | Chapter: 13<br><br>Case No.: 23-15971 (RG)<br><br>Judge: Hon. Rosemary Gambardella<br><br>Adversary Proceeding No. |
| In re:<br><br>Congregation Beth Israel of Scotch Plains,<br><br>Plaintiff.<br><br>v.<br><br>Stacy Margaritondo,<br><br>Defendant. | |

## **COMPLAINT**

Plaintiff Congregation Beth Israel of Scotch Plains (the "Plaintiff") by and through its counsel, submits this Complaint to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523 (the "Complaint") against the Defendant Stacy Margaritondo (the "Defendant"), and in support of same, alleges as follows:

1

7503584

## PRELIMINARY STATEMENT

1. This is an adversary proceeding brought by the Plaintiff and against the Defendant pursuant to 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6).

2. The debt that the Defendant owes to Plaintiff arises from the Defendant's fraudulent and unlawful conduct perpetrated with willful and malicious intent against her former employer, the Plaintiff. More specifically, and as set forth in greater detail in this Complaint, over a multi-year period during her employment with the Plaintiff, wherein she exploited the position of trust bestowed on the Defendant by the Plaintiff, the Defendant: (1) stole well over one hundred fifty thousand dollars of Plaintiff's money from Plaintiff's operating bank account; (2) created and provided to Plaintiff's Board of Directors false and fraudulent bank statements and financial records to conceal her theft; and (3) took out hundreds of thousands of dollars in high interest merchant cash advances in the Plaintiff's name without the knowledge or authorization of the Plaintiff's board members to replenish Plaintiff's coffers and forestall discovery of her fraudulent actions.

3. As her scheme collapsed on itself, the Defendant abruptly resigned from her employment with the Plaintiff without explanation and subsequently filed this joint bankruptcy petition.

4. Between her theft of funds and the additional amounts the Defendant incurred in the Plaintiff's name, the Plaintiff was willfully and maliciously damaged in an amount in excess of seven hundred thousand dollars.

5. The Plaintiff, a not for profit religious community, is now attempting to recover from the financial crisis precipitated by the Defendant's conduct, while being the subject of numerous collections efforts.

7503584

6. To date, the Defendant has not returned or repaid any of the money she stole from the Plaintiff and, presuming her bankruptcy schedules are true and accurate, has apparently depleted all of the money she stole.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this adversary proceeding and its subject matter pursuant to 28 U.S.C. § 157 and § 1334, 11 U.S.C. § 523(a)(4) and (a)(6), and Bankruptcy Rule 7001(6).

8. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

9. Venue lies in this district pursuant to 28 U.S.C. § 1409.

## GENERAL FACTUAL ALLEGATIONS

10. Beginning on or around January 31, 2011, the Plaintiff hired the Defendant as a full-time salaried employee.

11. Over the years, the Defendant served as a bookkeeper and office manager, and the Defendant ingratiated herself into the Plaintiff's community.

12. For the entirety of her employment with the Plaintiff, the Plaintiff believed the Defendant was a loyal and trustworthy employee.

13. The Plaintiff valued the Defendant's work as well as her extensive participation in the religious and social activities of the Plaintiff's community.

14. In the Defendant's role as office manager and bookkeeper for the Plaintiff, the Defendant was entrusted with the responsibility for, among other things, tracking the Plaintiff's finances, making accounting entries, preparing checks for accounts payable, and reporting to the Plaintiff's Board of Directors regarding the Plaintiff's financial condition, assets and liabilities.

3

7503584

15. When payments were to be made on Plaintiff's behalf, the Defendant was required to present support to Plaintiff's Treasurer for the accounts payable (e.g., an invoice or bill) and needed to obtain a signature and authorization from Plaintiff's President, Vice President or Treasurer, all members of Plaintiff's Board of Directors.

16. The Defendant *did not* have any independent authority to sign checks, authorize payments to third parties, or enter into contracts on Plaintiff's behalf.

17. Despite the outward appearance that the Defendant was a loyal and dedicated employee who cared about the Plaintiff's community, a review of bank records dating back to January 2020 has revealed that, in fact, the Defendant was consistently stealing money directly from Plaintiff's operating bank account and concealing her actions by creating false and fraudulent bank records and financial statements and by obtaining money to replenish Plaintiff's bank accounts through high-interest merchant cash advances taken in Plaintiff's name.

18. For example, a forensic analysis of Plaintiff's bank accounts revealed that between in or about January 2020 and in or about October 2022, the Defendant fraudulently wrote fifty-five (55) checks from Plaintiff's operating bank account *to herself* in an amount totaling approximately $155,734.75.

19. The individual checks ranged in amounts between approximately $900 to approximately $4,980. Upon information and belief, these amounts were designed to appear as Plaintiff's normal expenditures and were well below the $10,000 threshold that would have required the financial institution to generate a currency transaction report, more commonly known as a "CTR."

20. Notably, the fifty-five (55) checks made payable to Defendant bear the purported signature of Plaintiff's then-Treasurer, who would have been authorized to sign such checks on

Plaintiff's behalf. However, Plaintiff's former Treasurer confirmed that the signatures on the fifty-five (55) checks were not, in fact, her authentic signature and appeared to have been forged. Upon information and belief, Defendant forged the Treasurer's signature in order to make these checks payable to herself.

21. The Plaintiff is still investigating the period prior to January 2020 to ascertain whether additional checks were written by the Defendant to herself from the Plaintiff's accounts.

22. Of the fifty-five (55) forged checks made payable to the Defendant, forty-nine (49) of them were not recorded in Defendant's financial books and records.

23. The six (6) checks that the Defendant wrote to herself that were recorded in Plaintiff's books and records contained falsified payee information.

24. For example, rather than indicating that these checks were made payable to the Defendant, which was the true information, the Defendant entered these checks into Plaintiff's books and records with the payees as American Express, Global Mark Security, Home Depot and other payees that were familiar to the Plaintiff's Board of Directors.

25. As Defendant depleted Plaintiff's bank accounts through her theft, the Defendant needed a way to replenish the funds in order to avoid discovery by Plaintiff's Board of Directors and continue her scheme.

26. To accomplish this goal, the Defendant fraudulently obtained high interest loans and merchant cash advances in Plaintiff's name without the authorization or knowledge and consent of Plaintiff's Board of Directors.

27. Specifically, between in or about February 2022 and February 2023, the Defendant orchestrated nine (9) fraudulent cash advance transactions in a total amount of approximately $334,860.81.

28. These advances were short-term high-interest cash advances that the Defendant set up for repayment directly from Plaintiff's operating account on a daily basis.

29. The documentation for the cash advances list the Defendant as Plaintiff's authorized representative even though the Defendant was not authorized to entered into such transactions and such transactions had not been disclosed or approved by Plaintiff's Board of Directors.

30. Moreover, the Defendant's work email account with the Plaintiff contain several communications by the Defendant with cash advance company representatives showing that the Defendant fraudulently initiated and orchestrated these transactions in Plaintiff's name.

31. On account of these cash advances, the Defendant forced Plaintiff to repay, without their authorization, knowledge or consent, approximately $488,927.85 to these lenders and cash advance companies.

32. Throughout the time period that she was writing herself checks and obtaining cash advances to cover her tracks, the Defendant exploited her access to Plaintiff's accounting software as Plaintiff's bookkeeper to falsify Plaintiff's books and records to conceal Defendant's fraud.

33. As indicated above, the Defendant failed to record or falsely recorded all of the fifty-five (55) checks she fraudulently made payable to herself.

34. Additionally, the Defendant failed to record the merchant cash advances the Defendant obtained in Plaintiff's name and lied to Plaintiff's Board of Directors about Plaintiff's bank account balances and financial condition.

35. For example, on or about February 24, 2022, Defendant obtained the first of several cash advances from a merchant cash advance company.

7503584

36. At that time, the balance of Plaintiff's bank account had been depleted to approximately $31,223.08.

37. However, the books and records maintained by the Defendant reflected that Plaintiff's bank account balance at that time was approximately $397,516.29.

38. Similarly, on or about April 12, 2022, the Defendant obtained the first of several fraudulent cash advances from a second merchant cash advance company.

39. At that time, the balance of Plaintiff's bank account had been depleted to approximately $3,422.95.

40. However, the books and records maintained by the Defendant reflected that Plaintiff's bank account balance at that time was still approximately $397,516.29.

41. The Defendant's email account contains several emails the Defendant drafted and sent to Plaintiff's Treasurer and other members of Plaintiff's Board of Directors containing financial reconciliation reports and financial statements that contain falsified bank account balances.

42. By controlling the entries in Plaintiff's books and records as Plaintiff's bookkeeper, the Defendant was able to conceal the checks she wrote to herself from Plaintiff's Board of Directors.

43. In May 2023, shortly before Plaintiff's payroll checks began bouncing due to the Plaintiff's scheme, the Plaintiff was blindsided when the Defendant abruptly quit her position.

44. The Defendant's abuse of her position of trust and scheme outlined herein caused a loss to the Plaintiff of not less than $700,851.48.

45. As a result of the circumstances behind the Defendant's scheme and departure from her employment with the Plaintiff, the Plaintiff's investigation into the Defendant's actions

7503584

remains ongoing and the amount of the total loss caused by the Defendant's actions remains subject to revision.

46. Absent certain sources of funding that were beyond the Defendant's reach and control, Defendant's actions would have forced Plaintiff to close its doors and leave its religious community without a home.

## FIRST COUNT

47. The Plaintiff repeats and re-alleges the allegations set forth above as if set forth at length herein.

48. 11 U.S.C. § 523(a)(4) provides that "a discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor of any debt-(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

49. The wrongful acts perpetrated by the Defendant against the Plaintiff described herein all occurred while the Defendant was the office manager and/or bookkeeper of the Plaintiff and in a position of trust over the Plaintiff's finances acting in a fiduciary capacity.

50. At all relevant times, the Defendant outwardly appeared to be loyal and trustworthy employee who cared about the Plaintiff's community.

51. The Plaintiff relied on the Defendant's representations that she was a loyal and trustworthy employee who cared about the Plaintiff's community by entrusting her with stewardship over the Plaintiff's finances in her role as the Plaintiff's bookkeeper and/or office manager.

52. As fully described above, and without prejudice to additional discoveries in the course of the Plaintiff's investigation of additional losses caused by the Defendant's wrongful acts, the Defendant exploited her position of trust as the Plaintiff's bookkeeper and/or office manager

8

by wrongfully and without any authority by writing at least fifty-five (55) checks from Plaintiff's operating bank account to herself in an amount totaling approximately $155,734.75.

53. The Defendant falsely recorded the above referenced fifty-five (55) checks that she wrote to herself to avoid detection.

54. Furthermore, as fully described above, the Defendant exploited her position of trust as the bookkeeper and/or office manager of the Plaintiff by obtaining loans and merchant cash advances in the Plaintiff's name without the authorization or knowledge and consent of Plaintiff's Board of Directors in order to replenish the funds so the Defendant could avoid discovery of her actions.

55. The Defendant also concealed her actions by creating false and fraudulent bank records and financial statements to present to the Plaintiff's Board of Directors.

56. The Defendant's wrongful actions and abuse of her position of trust described herein caused a loss to the Plaintiff of not less than $700,851.48.

**WHEREFORE**, the Plaintiff seeks a declaration that an amount not less than $700,851.48 owed to it by the Defendant is a non-dischargeable debt under 11 U.S.C. §523(a)(4); along with an award of compensatory damages, counsel fees, cost of suit and such other and further relief as the Court deems just and equitable.

## SECOND COUNT

57. The Plaintiff repeats and re-alleges the allegations set forth above as if fully set forth herein.

58. 11 U.S.C. § 523(a)(6) provides that "discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –(6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

59. The Defendant's wrongful actions, as fully set forth above, with the willful and malicious intent to injure and harm the Plaintiff caused the Plaintiff a loss of not less than $700,851.48.

**WHEREFORE**, the Plaintiff seeks a declaration that an amount not less than $700,851.48 owed to it by the Defendant is a non-dischargeable debt under 11 U.S.C. §523(a)(6); along with an award of compensatory damages, counsel fees, cost of suit and such other and further relief as the Court deems just and equitable.

## RESERVATION OF RIGHTS

60. The Plaintiff reserves its right to amend the Complaint if necessary.

Dated: October 30, 2023

**PORZIO, BROMBERG & NEWMAN, P.C.**
*Counsel to the Plaintiff*

*/s/ David E. Sklar*
David E. Sklar

7503584